IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BLAKE FRENCH and DALE FRENCH,<br><br>                   Plaintiffs,<br>     v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., a foreign corporation, EQUIFAX CREDIT INFORMATION SERVICES, INC., a foreign corporation, and TRANS UNION CORPORATION, a foreign corporation,<br>                   Defendants. | Civil No.  00-0007-AS<br><br>O P I N I O N |

ASHMANSKAS, Magistrate Judge:

      Plaintiffs Dale and Blake French ("Plaintiffs") filed this action for violation of the Fair Credit Reporting Act (15 U.S.C. §1681 *et seq.*)(the "Act"). Plaintiffs allege that Defendants Trans Union Corporation ("Trans Union") and Experian Information Solutions, Inc. ("Experian")(collectively "Defendants"),[1] violated the Act by: 1) failing to comply with the reinvestigation requirement in 15 U.S.C. §1681i(a); 2) making consumer reports containing obsolete information excluded by 15 U.S.C. §1681c(a); and 3) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports as required by 15 U.S.C. §1681c(b). Plaintiffs seek partial

---

[1] Equifax Credit Services, Inc., who was also a named defendant in this action as well, was dismissed by order dated April 2, 2001.

Page -1- OPINION                                                                                                  *{SIB}*

summary judgment against Defendants. Trans Union has filed its own motion for summary judgment on all claims asserted against it by Plaintiffs.

## BACKGROUND

**Trans Union**

In late 1997, Plaintiffs obtained a copy of their credit report from Trans Union. On December 8, 1997, Blake French sent Trans Union a letter disputing eight items on the credit report. The letter indicated the items in dispute but did not explain the nature of the dispute.

On December 13, 1997, Trans Union acknowledged receipt of Blake French's letter and sent a consumer dispute verification form ("CDV") to each of the creditors with a disputed item as well as to a public record vendor to confirm a civil judgment entered in Washington County. The records reveal that Blake French disputed two separate items with SeaFirst as a creditor but that Trans Union issued a CDV to SeaFirst on only one of the reported items.

On January 12, 1998, Trans Union deleted one of the SeaFirst accounts, a GEC/Suzuki account and the Washington County judgment because it had not received timely responses to the CDVs. In response to the CDV, Bonded Credit directed Trans Union to delete its disputed account. A Sears and a Nordstrom account were verified as accurate by the creditors and remained on Blake French's report. Additionally, the SeaFirst account that was not investigated by Trans Union remained on the report (the "SeaFirst Account").

On March 3, 1998, Blake French sent a second letter to Trans Union again placing the Sears, Nordstrom and the SeaFirst Account in dispute. Again, Blake French did not indicate the nature of the dispute. On March 16, 1998, Trans Union acknowledged receipt of the letter and asked Blake French to "specify why you are disputing it (not mine, not late, paid in full, etc.)." The letter advised Blake French that his failure to provide the additional information would prevent Trans Union from being able to reinvestigate his dispute. Blake French never responded to Trans Union's letter and Trans Union did not reinvestigate the accounts mentioned in the March letter.

On April 28, 1999, Trans Union received a telephone call from Plaintiffs disputing a JC Penney account on Dale French's credit report. That same day, Trans Union forwarded a CDV to JC

Penney to verify the accuracy of the information contained in the credit report. JC Penney confirmed the accuracy of the information but directed Trans Union to delete the account as obsolete.

On April 29, 1999, Plaintiffs sent a letter to Trans Union disputing a Continental Alliance account and a GECC/Suzuki account, as well as the Washington County judgment that had been deleted from Blake French's report in January 1998, which were then listed solely on Dale French's credit report. Plaintiffs also disputed, for the third time, the Sea First Account that continued to be listed on Blake French's credit report. Plaintiffs indicated that the Contintental Alliance account was not theirs; the civil judgment was entered in their favor; the SeaFirst Account was closed over seven years previously; and the GECC/Suzuki account had been paid and the amounts shown were grossly overstated.

Trans Union forwarded CDVs to Continental Alliance and SeaFirst for verification of their accounts, as well as to its public record vendor for verification of the Washington County judgment.[2] Trans Union did not investigate the GECC/Suzuki account because the account showed no balance due.

On June 2, 1999, after completing their investigation, Trans Union deleted the SeaFirst Account and the Washington County judgment from Dale French's credit report as they received no response from the CDV's. Trans Union also deleted the SeaFirst Account from Blake French's report as directed by SeaFirst. Continental Alliance verified its account with Dale French and updated the outstanding balance, which was noted on Dale French's credit report.

Later in the day on June 2, 1999, Trans Union received a response from its public record vendor verifying that the Washington County judgment appeard under Dale French's name. Accordingly, Trans Union reinserted the judgment in Dale French's credit report and sent her a copy of the report.

On June 8, 1999, Trans Union received a telephone call from Plaintiffs again disputing the Washington County judgment on Dale French's credit report. In response to a CVD sent out

---

[2] Plaintiffs provided Trans Union with a computer screen print-out concerning the civil judgment. However, because Trans Union required an official court record to alter the credit report, Trans Union still requested a independent verification.

Page -3- OPINION                                                                                                              *{SIB}*

1 immediately by Trans Union, the public record vendor responded that the judgment was accurate as
2 reported under Blake French's name. Since the judgment was no longer listed on Blake French's
3 credit report, Trans Union did not make any changes to his report. Trans Union did change the court
4 designation on Dale French's report to District Court.

5       On June 29, 1999, Plaintiffs provided Trans Union with a copy of the Washington County
6 judgment showing Plaintiffs as the judgment creditor. Trans Union deleted the judgment from Dale
7 French's credit report that day.

8       On June 30, 1999, Trans Union contacted GECC/Suzuki by telephone to verify the account.
9 GECC/Suzuki instructed Trans Union to delete the account from both of Plaintiffs' credit reports.
10 Trans Union deleted the accounts and provided Plaintiffs with updated credit reports. Plaintiffs then
11 filed this action in late 1999.

12 **Experian**

13       On March 3, 1998, Plaintiffs sent separate letters to Experian putting a number of accounts on
14 their credit reports in dispute. Experian investigated five of the eight total accounts disputed by
15 Plaintiffs with the following results: 1) the Washington County judgment remained listed as a satisfied
16 civil claim on both credit reports ; 2) the JC Penney account remained as a seriously past due account
17 with $30 balance outstanding on both credit reports; 3) the SeaFirst Account remained as an open
18 account that was redeemed but was a repossession with a balance of $23,680 as of 11/19/97 on both
19 credit reports; 4) the Recovery and Collection account was deleted from Dale French's credit report;[3]
20 and 5) the Chandler Justice Court civil judgment was deleted from Blake French's credit report.[4]
21 Experian did not investigate either the RFS/GECC or the Sears accounts on the grounds that it had
22 insufficient information to conduct an investigation. Plaintiffs indicated in their letters that the amount
23 and dates listed for the RFS/GECC account were incorrect. Similarly, the letters indicated that the
24 dates for the Sears account were incorrect. Experian also failed to investigate an account reported

---

26     [3] This account was originally listed only on Dale French's credit report.

27     [4] This account was originally listed only on Blake French's credit report.

by CRW Financial but that item was deleted from Dale French's credit report generated April 2, 1998.

In a joint letter dated June 9, 1999, Plaintiffs referenced a joint letter dated April 29, 1999, in which Plaintiffs disputed three items that remained on their reports. These items included the RFS/GECC account and the Washington County judgment that had been disputed previously and a Coastal Adjustment Bureau[5] collection account. Plaintiffs explained that the RFS/GECC account was paid and the amount was grossly incorrect; the Washington County judgment was issued in favor of Plaintiffs as judgment creditors; and the Coastal Adjustment Bureau collection account was caused by the original creditor sending the closing bill to the wrong address. Plaintiffs referenced a proof of judgment in the Washington County matter and indicated that they were enclosing a copy of the judgment.[6] Plaintiffs explained that because Experian had failed to respond to the May 3, 1999, letter within 30 days, they assumed that the information contained in the report was either inaccurate or could not be verified and should be deleted. Plaintiff's demanded an immediate response to avoid legal action under the Act. Experian represents that it never received the May 3, 1999, letter.

Experian investigated the Washington County judgment and amended Dale French's credit report to show the judgment as a claim, not a liability. Experian was unable to find a Coastal Adjustment Bureau collection account on either Plaintiffs current credit reports. The RFS/GECC account continued to be shown as an account with a zero balance as of 3/93 with an original balance of $13,823.

///

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[5] The court was unable to find a Coastal Adjustment Bureau collection account on either Plaintiff's April 1998 credit reports.

[6] Attached to Blake French's March 3, 1998, letter was a copy of a computer printout an a judgment entered in favor of Blake French against Consolidated Services from Washington County District Court.

Page -5- OPINION                                                                                                            *{SIB}*

material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he requirement is that there be no genuine issue of material fact." Anthes v. Transworld Systems, Inc., 765 F. Supp. 162, 165 (Del. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. Celotex v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. Id. at 324. In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## DISCUSSION

**The Fair Credit Reporting Act**

The Act was passed "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer . . . ." § 1681(b). The Act was intended to protect consumers against the transmission of inaccurate information about them and to establish credit reporting practices that utilize "accurate, relevant, and current information n a confidential and responsible manner." Guimond v. Trans Union Credit Information Company, 45 F.3d 1329, 1333 (9th Cir. 1995).

Section 1681e(b) of the Act provides that:

Page -6- OPINION                                                                                                         *{SIB}*

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

In Guimond, the Ninth Circuit considered the purpose of the Act and the language of the Section 1681e(b) and held that:

> Liability under §1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information. In order to make out a [*prima facie*] violation under §1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report that contained inaccurate information. The [Act] does not impose strict liability, however -- an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures. The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.

Guimond, 45 F.3d at 1333 (cites omitted).

Section 1681i(a)(1) requires a consumer reporting agency to investigate any dispute as to the accuracy and completeness of any item contained in a consumer's file within 30 days of receiving notice of the dispute from the consumer. To state a claim under this section, a consumer must establish that they informed the consumer reporting agency that its report contained inaccuracies and that the agency failed to delete or correct these inaccuracies. Guimond, 45 F.3d at 1335 (9th Cir. 1995). Accordingly, an element of the claim is that the report contains a factual deficiency or error that could have been remedied by investigation. Cahlin .v General Motors Acceptance Corporation, 936 F.2d 1151, 1160 (11th Cir. 1991).

A consumer reporting agency may terminate an investigation if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant. The agency must inform the consumer of the termination of the investigation within five business day of such determination. 15 U.S.C. §1681i(a)(3).

If the investigation reveals inaccurate or unverifiable information, the consumer reporting agency must modify the information in accordance with the results of the investigation or delete that item of information from the consumer's file. Any information deleted from a consumer's file as a result of an investigation may not be reinserted in the file unless supported by information certified to be complete and accurate. The consumer is entitled to notice of any reinserted item in writing

Page -7- OPINION                                                                                                           *{SIB}*

within five days of the reinsertion. 15 U.S.C. §1681i(a)(5).

Consumer reporting agencies are required to delete most adverse items approximately seven years after the first delinquency reported to the agency. Bankruptcies remain on the report for ten years after the entry of the order for relief or the date of adjudication. 15 U.S.C. §1681c(a).

**Plaintiffs' Motion for Summary Judgment Against Trans Union**

Plaintiffs contend that Trans Union's failure to investigate the SeaFirst Account in December 1997 was a violation of the Act. Trans Union concedes that it did not investigate the SeaFirst Account at that time but argues that it was prevented from doing so because Blake French failed to set forth the nature of the dispute.

Blake French's December 1997 credit report listed the SeaFirst Account closed and paid as agreed with a zero balance as of 11/1991. The negative aspect of the SeaFirst Account is that Plaintiffs were 30 days late four time and 60 days late twice in the last six months of the account with a maximum delinquency of 60 days, which occurred in October 1991. The report also states that Plaintiffs were 90 days late 70 times in the six months before the account was closed, which was clearly a typographical error. The credit report issued January 12, 1998, after Trans Union completed the investigation, deleted the report of any 90-day delinquencies and amended the prior six-month delinquencies to 30 days late twice and 60 days late twice.

The court is not convinced by Trans Union's argument that it did not have enough information to investigate the SeaFirst Account. It had exactly the same amount of information on the other seven accounts that it was able to investigate. Trans Union has not established why the SeaFirst Account was so different from the other seven.

However, Plaintiffs have failed to establish that the SeaFirst Account was reported with factual errors. In the April 29, 1999, letter, Plaintiffs disputed the SeaFirst Account as being closed or obsolete. The December 1997 credit report listed the SeaFirst Account as closed. Accordingly, no investigation would have uncovered an inaccuracy in this part of the report. Plaintiffs do not contest that they were, on occasion, 30 days and 60 days late paying the account but neither party has not established that the numbers in either report are the actual number of late payments made by

1  Plaintiff. Plaintiff is not entitled to summary judgment on this issue.

2  Plaintiffs also contend that Trans Union's failure to investigate the GECC account listed on
3  Dale French's credit report in response to the April 1999 letter putting that account in dispute was a
4  violation of the Act. Plaintiffs explained in the letter that "This item is paid. The amounts shown are
5  grossly incorrect." Trans Union concedes that it did not investigate the GECC account at that time but
6  argues that it was not required to because the account did not report an amount due or a balance.

7  The GECC account showed that as of 3/1993, the last day it was updated, the the account was
8  30 days past due with a monthly payment of $287 and that the most owed on the account was $13,823.
9  There was no indication of the amount of the current balance. This information remained the same in
10 the subsequent credit report issued June 2, 1999, and remained on Dale French's credit report until
11 June 30, 1999, when Trans Union contacted GECC by telephone to verify the accout and was
12 instructed to delete it from both of Plaintiffs credit reports.

13 The GECC account, as reported by Trans Union on Dale French's report, was factually
14 inaccurate, or at the very least, ambiguous on its face. The report indicated that the account was past
15 due as of 3/1993. While the report does not show any balance due, it also does not show that the
16 account was paid or that the balance was zero. Every other account listed on the same page of the
17 report as the GECC account had a line for a "Balance" and listed an amount in that line. The GECC
18 did not even have a "Balance" line.

19 The court finds that Trans Union had an obligation to investigate the GECC account when the
20 report failed to show the account paid or with a zero balance and the last update had been completed
21 in March 1993. Even if Trans Union reasonably determined that the dispute was frivolous or
22 irrelevant, Trans Union failed to inform Plaintiffs of such determination in a timely manner as required
23 by the Act. Plaintiffs are entitled to summary judgment on their claim based on Trans Union's failure
24 to timely investigate Dale French's GECC account.

25 On June 2, 1999, Trans Union deleted the Washington County judgment from Dale French's
26 report based on the public record vendor's failure to respond timely to the CDV, and sent an update
27 copy of the report to Plaintiffs. Later that same day, the public record vendor provided Trans Union

with information that the Washington County judgment was reported February 10, 1997. Plaintiffs contend that this violates the Act in that Trans Union did not obtain the required certification prior to reinserting the information on Dale French's report.

The court has not seen the documents provided by the vendor and relied on by Trans Union. There is a dispute whether the information provided by the public record vendor was appropriately certified. A genuine issue of material fact exists which prevents the court from making a summary judgment ruling at this time.

Finally, Plaintiff argues that Trans Union allowed the adverse information from the SeaFirst Account to remain on Blake French's report for more than seven years. As noted above, the account showed closed, paid as agreed with a zero balance as of November 1991 with late payments reported for the six-month period ending November 1991. Plaintiffs argue that the adverse information became obsolete, at the very least, seven years from the date the account was closed, which would require deletion of the information in November 1998. Trans Union did not delete the information until June 2, 1999.

Trans Union argues that because Plaintiffs failed to establish the first date of the delinquency on the account, they are unable to establish when the seven-year period expired. If the account was closed in November 1991, it is clear that the first date of delinquency occurred prior to that date. Plaintiffs have satisfactorily established a date of delinquency on the account.

Trans Union also argues that even though the account was closed, it is possible that additional activity may occur on the account to justify leaving the account on the report. While this may be true, it does not alter the fact that all of the late payments reported were made prior to November 1991, were at least seven years old, and should have been deleted. Plaintiffs are entitled to summary judgment on this claim.

At the close of oral argument on the motions for summary judgment, Trans Union argued for the first time that Plaintiffs failed to present any evidence that they incurred damages as a result of Trans Union's violations of the Act and, therefore, could not prevail on their motion for summary judgment. Plaintiffs contend that they seek only summary judgment on the issue of Trans Union's

Page -10- OPINION *{SIB}*

violation of the Act and that they are not required to prove damages to establish mere violations under the Act. In the alternative, Plaintiffs assert that they have adequately established emotional damages as well as damages to their credit evidenced by a requirement that they provide a security deposit and a decision not to seek credit based on the negative accounts on their report.

The Ninth Circuit has unequivocally stated that the denial of credit is not a prerequisite to stating a valid claim under the Act. Guimond, 45 F.3d at 1333. Evidence of emotional distress or humiliation caused by inaccuracies in a credit report attributable to defendant is sufficient to support a claim under the Act. Id.

Here, Plaintiffs have presented evidence by affidavit that they were upset, frustrated and emotionally distressed by Trans Union's failure to correct the inaccuracies in their credit reports. Additionally, Plaintiffs have stated that they were required to pay a deposit when leasing a home "because of adverse information on our credit report." Trans Union does not dispute this evidence. Accordingly, Plaintiffs have adequately established the existence of actual damages necessary to support their request for summary judgment against Trans Union.

**Trans Union's Motion for Summary Judgment**

In their motion for summary judgment, Trans Union seeks summary judgment on the same claims addressed by Plaintiffs' motion for summary judgment against Trans Union. Based on the discussion of Plaintiffs' motion, set forth above, the court denies Trans Union's motion for summary judgment on the reinvestigation and reporting of obsolete information claims.

Trans Union also seeks summary judgment on Plaintiffs' claim that they negligently failed to follow reasonable procedures to assure the accuracy of Plaintiffs' credit information. In order to prove this claim, Plaintiffs must establish that their credit reports contained inaccuracies.

Plaintiffs have adequately established that their credit reports contained inaccuracies. The one glaring inaccuracy is the reporting of the Washington County judgment as a judgment against Plaintiffs, rather than in favor of Plaintiffs. With regard to the other disputed accounts, the evidence shows that a number of them were reported correctly and were eventually removed as obsolete. The remaining accounts, which were either written off because the reporting creditor did not respond to the CDV or

because the account became obsolete, appear to contain some inaccuracies. Plaintiffs have not come forward with sufficient evidence to clearly establish the inaccuracies but have, with their own testimony and viewing the evidence in their favor, raised a genuine issue of material fact with regard to a number of inaccurate statements on their reports.

Trans Union also argues that, as a matter of law, they followed reasonable procedures to assure the maximum possible accuracy of information in Plaintiffs' credit reports. The general procedures in place at Trans Union were described in Trans Union's memorandum in support of motion for summary judgment as follows:

> Trans Union contracts with credit grantors and public record vendors (a/k/a subscribers), who agree, as a term of that contract, to comply with the Act by providing accurate information concerning consumers. Thus, Trans Union relies upon these subscribers' agreements to ensure the accuracy of the information initially reported to it. Trans Union only enters into subscriber agreements with entities that it finds are reliable, and terminates the relationship if the subscriber demonstrates any pattern of unreliability.
>
> Credit grantors report credit information concerning individual consumers to Trans Union ("tradelines"). Credit information includes, among other things, the credit grantor's name, the consumer's account number, the account balance, and payment history. When reporting this credit information, the credit grantor includes the customer's identifying information associated with that particular tradeline.
>
> Trans Union also receives public information from third party vendors who research public records and transmit that information to credit reporting agencies, such as Trans Union. When a third party vendor reports public record information to Trans Union, it includes as much of the consumer's personal identification information as is available from the public record, such as name address, social security, the name of the public record source, and any available information specific to the public record (*e.g.*, in the case of a civil judgment, the name of the court, the case number or docket number, the amount of the judgment, the date of the judgment, whether the judgment is paid or unpaid, the name of the plaintiff and/or judgment creditor).
>
> Credit tradelines and public record information are not immediately compiled into a credit report, but rather, are stored in connection with the identifying information in Trans Union's database. When a subscriber request a credit report on a particular consumer, the subscriber provides Trans Union with identifying information about that consumer. Similarly, when a consumer requests a copy of his or her credit report, he or she must provide Trans Union with sufficient identifying information to process the request. Once Trans Union receives the identifying information either from a subscriber or a consumer, Trans Union's computer system searches for tradelines and other information associated with the identifying information provided by the subscriber or consumer and compiles that information into a credit report. The credit report is then transmitted to the subscriber or consumer, as requested.

The mere fact that a consumer reporting agency reports inaccurate or incomplete information does not establish that the agency's procedures are unreasonable. The agencies are required to rely on information provided to them by creditors and third party vendors. The agency generally will not be responsible for the publication of inaccurate information which it received from its creditors and vendors unless the agency has reason to know that the creditor or vendor is unreliable or the consumer has disputed an item and the agency has failed to action to correct it.

The Federal Trade Commission explained in a comment on the Act that:

> [Section 1681e(b) does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate [Section 1681e(b)] simply by reporting an item of information that turns out to be inaccurate. However, when a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy.
>
> * * *
>
> [Section 1681e(b)] does not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source.

16 C.F.R. Ch. 1 (1-1-01 ed.), Pt. 600, App., pp. 508-09.

The court finds that Plaintiffs have raised a genuine issue of material fact with regard to Trans Union's general procedures. Again, the glaring problem is the Washington County judgment, which was reinvestigated a number of times by the third party vendor, who never revealed the inaccuracy of the reporting of Plaintiffs as judgment debtors. The issue was not resolved until Plaintiffs obtained their own copy of the judgment and provided it to Trans Union. Additionally, Trans Union was asked to reinvestigate a few other accounts more than once before Trans Union was able to, or, in some cases, even attempted to, track down the correct information. Viewing this evidence in the light most favorable to Plaintiffs and keeping in mind the Ninth Circuits statement that the "reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of the cases" the court finds that Plaintiff has raised a genuine issue of material fact on their claim for violation of Section 1681e(b).

**Experian**

Plaintiffs contend that Experian failed to investigate the RFS/GECC account and the Sears Roebuck & Co. account in March 1998. Experian concedes that it did not investigate these accounts but argues that it properly determined that Plaintiffs' dispute was frivolous and irrelevant and that it was not required to reinvestigate the accounts.

The first step to establishing liability under Section 1681i(a) is proving that the consumer reporting agency was reporting inaccurate or incomplete information. Plaintiffs disputed the amount shown and the dates on the RFS/GECC account. The report lists the initial amount of the loan to be $13,823 and the original delinquency date to be 2/15/93. Blake French testified in his deposition that the initial amount of the loan was about $4,700 and the original delinquency date was closer to 2/15/92. Plaintiff disputed the dates on the Sears Roebuck & Co. account. The report lists an original delinquency date of 11/10/92 and Blake French testified that he thought the original delinquency date was roughly a year earlier than that. No one has provided evidence from RFS/GECC or Sears Roebuck & Co. with regard to the actual amount or dates in question. A genuine issue of material fact exists with regard to the accuracy of the information reported and Plaintiffs are not entitled to summary judgment on these claims.

Additionally, Plaintiffs argue that Experian did not properly reinvestigate the Washington County judgment when it failed to provide its public record vendor with "all relevant information regarding the dispute that the agency [had] received from the consumer." 15 U.S.C. §1681i(a)(2)(A). Specifically, Plaintiffs contend that Experian should have told the public record vendor that the judgment was in the Plaintiffs' favor because they had countersued in the lawsuit and won or provided the public record vendor with a copy of the computer record of the judgment.

Experian advised the public record vendor that Plaintiffs claimed the action was "vacated, reversed or never rendered." Experian explained that this language was commonly used by Experian, was the appropriate dispute code language for this situation and that the public record vendor knew what the language meant based on industry custom and its practice with Experian. Experian provided the information provided to it by Plaintiffs to the public record vendor in the ordinary course of

Page -14- OPINION  *{SIB}*

business and has met its obligation under the statute. Plaintiff is not entitled to summary judgment on this claim.

Finally, Plaintiffs argue that Experian failed to delete obsolete information when it continued to report a SeaFirst account seven years after the original delinquency date. The original delinquency date reported was May 15, 1992. In Dale French's December 3, 1997, report, the SeaFirst account was reported as paid with a zero balance on 7/31/92. On Dale French's July 2, 1999, credit report, the SeaFirst account was reported as open/never late, with a balance of $23,860 as of 11/97 and a zero dollar monthly payment. The name of the creditor was changed from SeaFirst to Bank of America on the credit report issued January 4, 2000.

Experian explained that it updated the account after Plaintiffs disputed the account in March 1998. SeaFirst returned the CDV to Experian expressly providing "Update past amount due. And we show nothing paid on this account and bal is still owing $24,278.00." Accordingly, Experian deleted the clearly "adverse" information that the account had been delinquent and that the creditor ended up repossessing the automobile. Experian also deleted the report that the account was paid with a recent balance of $23,680[7] and listed it as an open account with no late payments.

Section 1681c(a)(5) requires a consumer reporting agency to remove "adverse" information after seven years. Other than the fact that Plaintiffs' reports show that they borrowed nearly $25,000 in 1991 and that Plaintiffs still have an obligation to pay it back, there is nothing in the report of this account that can considered adverse. If this were the case, any debt that exceeded an initial term of

seven years and was paid timely during the first seven years would be considered "adverse" and removed from a report even if the debt had not been repaid. What makes this account adverse is that Plaintiffs feel that it was satisfied in 1992 when the automobile was repossessed and the account remains on their reports. The appropriate way to handle that would be to dispute the account as

---

[7] There is no explanation why Experian used the $23,680 balance rather than the $24,278.00 figure provided by SeaFirst.

Page -15- OPINION                                                                                                          {SIB}

closed or paid.

The SeaFirst/Bank of America account listed on Dale French's report does not contain any adverse information on its face and, accordingly, is not subject to deletion as an obsolete account after seven years. Plaintiffs are not entitled to summary judgment on this claim.

## CONCLUSION

Plaintiffs' motion (72) for partial summary judgment against Trans Union is GRANTED with regard to Trans Union's liability for its failure to investigate the GECC account and its failure to delete the obsolete information on the SeaFirst Account and DENIED with regard to the failure to investigate the SeaFirst Account and the reinsertion of the Washington County judgment. The amount of damages to be awarded Plaintiffs on these claims shall be determined at trial by a jury. Trans Union's motion (76) for summary judgment is DENIED. Plaintiff's motion (67) for partial summary judgment against Experian is DENIED.

DATED this 9th day of November, 2001.

    /s/ Donald C. Ashmanskas
    DONALD C. ASHMANSKAS
    United States Magistrate Judge